UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUAN THANH LE, | No.  1:25-cv-01855-KES-EPG (HC) |
| Petitioner, | |
| v. | ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |
| Warden, Golden State Annex Detention Facility; Current or Acting Field Office Director, San Francisco Field Office Director, United States Immigration and Customs Enforcement; Current or Acting Director, United States Immigration and Customs Enforcement; Current or Acting Secretary, United States Department of Homeland Security; Current or Acting Attorney General of the United States, | Doc. 13 |
| Respondents. | |

Before the Court is petitioner Tuan Thanh Le's motion for temporary restraining order.[1] Doc. 13.  For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

## I.     Background

Petitioner was born in Vietnam in 1974.  *See* Doc. 15, Ex. A at 14.  When he was eleven years old, he was admitted to the United States as a lawful permanent resident.  *See id.* at 8.  In

---

[1] Petitioner noted in his reply that Le is his last name and the docket improperly lists his last name as his first name.  Doc. 21 at 2 n.1.  The Court will direct the Clerk to correct the docket.

1

1993, petitioner was convicted of aggravated robbery with a deadly weapon and sentenced to twenty years in prison. *Id.* Due to that conviction, the government initiated removal proceedings while he was still in prison. *See id.* at 6–8. An immigration judge ordered petitioner removed on October 4, 1999. *See id.* at 9.

After completing his prison sentence, Immigration and Customs Enforcement ("ICE") detained petitioner. Doc. 19 at 2. ICE eventually released him on an order of supervision. *Id.* The regulations that authorize ICE to release a noncitizen who has been ordered removed provide:

> Before making any . . . decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:
>
> 1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
>
> 2) The detainee is presently a non-violent person;
>
> 3) The detainee is likely to remain nonviolent if released;
>
> 4) The detainee is not likely to pose a threat to the community following release;
>
> 5) The detainee is not likely to violate the conditions of release; and
>
> 6) The detainee does not pose a significant flight risk if released.

8 C.F.R. § 241.4(e); *see also* 8 C.F.R. §§ 241.4(h)(3), (i)(6) (noting that the Executive Associate Commissioner and district director "must [also] be able to reach the conclusions set forth in paragraph (e) of this section" "[b]efore making any decision to release a detainee"). The ICE Form I-213, Record of Deportable/Inadmissible Alien, which was prepared by ICE on June 29, 2025, also states that "[s]ubject has been deemed to be non-removable due to travel documents being unattainable[.]" Doc. 15, Ex. B at 22.

For many years, petitioner remained under that order of supervision and reported to ICE as required. Doc. 19 at 2.[2] He became a father and his two sons are now eleven and twelve-

---

[2] The exact dates that petitioner was released from prison, detained by ICE, and released by ICE are not clear from the parties' filings. Petitioner states that he was discharged from prison in

2

years-old.  *Id.*  The mother of one of his sons passed away in 2023.  *Id.*; Doc. 21 at 2 n.2.

ICE re-detained petitioner on July 1, 2025.  Doc. 1 at ¶ 19; Doc. 19 at 2.  Respondents assert that they re-detained him because his "removal from the United States to Vietnam is now imminent and DHS submitted a travel document request to the Government of Vietnam."  Doc. 15 at 2.[3]  The record shows that ICE submitted a travel document request to Vietnam on August 22, 2025, fifty-two days *after* detaining petitioner.  Doc. 15, Ex. A at 5.  Eight months later, respondents have not obtained any such travel document and there is no evidence that Vietnam will issue one in the reasonably foreseeable future.

On December 15, 2025, petitioner, proceeding pro se, filed a petition for writ of habeas corpus.  Doc. 1.  On December 22, 2025, the assigned magistrate judge ordered respondents to file a response within sixty days.  Doc. 4.  Petitioner filed a motion for temporary restraining order on February 12, 2026, Doc. 13, and the Court appointed counsel for petitioner, Doc. 14.  Respondents filed a motion to dismiss on February 20, 2026, *see* Doc. 15, but subsequently stipulated that the motion to dismiss should be construed as an opposition to the motion for temporary restraining order, *see* Doc. 20.  Petitioner's appointed counsel filed a reply in support of the motion for temporary restraining order on March 2, 2025.  Doc. 21.

///

///

May 2014 and was released to ICE custody.  Doc. 19 at 2.  Petitioner also states that "[o]n September 05, 2007, I was released on order of supervision from ICE custody."  *Id.*  Respondents' opposition does not contain those dates or any information about petitioner's order of supervision.  *See* Doc. 15.

[3] The Court notes that the ICE Form I-213 states that petitioner was arrested for assault on March 22, 2025, and that "[t]he subject is in violation of his release conditions."  Doc. 15, Ex. B at 22–23.  While 8 C.F.R. § 241.13(i)(1) allows the government to revoke a noncitizen's release if he violates the terms of their order of supervision, that provision appears to only authorize detention for six months.  *See* 8 C.F.R. § 241.13(i)(1) (stating that "[t]he alien may be continued in detention for an additional six months" if he violates any condition of release).  In their briefing, respondents do not argue that petitioner's detention is currently authorized under this provision, presumably because he has now been detained for over eight months.  *See* Doc. 15 at 2 (arguing that petitioner's detention is authorized under 8 C.F.R. § 241.13(i)(2), which authorizes detention when there is a significant likelihood of removal in the reasonably foreseeable future).

**II.    Conversion to a Motion for Preliminary Injunction**

The standards for issuing a temporary restraining order and a preliminary injunction are substantially the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), respondents had notice and opportunity to respond in opposition, *see* Doc. 11, and the parties agreed that a hearing was not necessary in this case, *see* Doc. 20 at 2 (stipulating that once "petitioner's reply is filed, the parties agree the motion [is] . . . ripe for decision"). Petitioner's motion is therefore converted to a motion for preliminary injunction.

**III.    Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV.    Discussion**

**a.    Likelihood of Success on the Merits**

Relying on *Zadvydas v. Davis*, 533 U.S. 678 (2001), petitioner's pro se petition argues that his detention has become unduly prolonged in violation of the Due Process Clause. *See* Doc. 1. In *Zadvydas*, the Supreme Court read an implicit constitutional limitation into 8 U.S.C. § 1231, the statute that authorizes the detention of a noncitizen who has been ordered removed:

4

If, after being ordered removed, a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 692, 701.  Once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future[,]" then the government must release the noncitizen.  *Id.*

Respondents point to regulations that permit ICE to revoke the release of a noncitizen who has been ordered removed, detained, and then released after ICE fails to execute the order of removal:  8 C.F.R. §§ 241.13(i) and 241.4(l).  *See* Doc. 15 at 2.  Those regulations—both of which are titled "Revocation of release"—apply to "[a]ny alien who has been released under an order of supervision" after being ordered removed.  8 C.F.R. § 241.13(i); *see* 8 C.F.R. § 241.4(l); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see Nguyen v. Hyde*, 788 F. Supp. 3d 144, 146–49 (D. Mass. 2025).  They outline the process to be followed if ICE seeks to "revoke an alien's release" and  "return the alien to custody."  8 C.F.R. § 241.13(i); *see* 8 C.F.R. § 241.4(l).[4]  As petitioner was "released under an order of supervision" after being ordered removed and ICE now seeks to "revoke" that release, it is those regulations, not the framework from *Zadvydas*, which govern the issues in this case.

Section 241.13(i)(2) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[5]  8 C.F.R. § 241.13(i)(2).  The procedure established by those regulations mandate that ICE be able to show a significant likelihood of removal in the reasonably foreseeable future.  In *Escalante*, which also dealt with a noncitizen

---

[4] As other courts have pointed out, those regulations were implemented to account for the limitations that *Zadvydas* placed on its detention authority.  *E.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *see Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025).

[5] The regulation also permits revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision."  8 C.F.R. § 241.13(i)(1).  Respondents do not argue in their briefing that petitioner's re-detention is currently justified under that regulation.

who had been ordered removed, was subsequently released on an order of supervision, and then was re-detained, the court noted that:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4)[,] which is entitled "*Service determination under 8 C.F.R. 241.13*[,]" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third county, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

*Escalante*, 2025 WL 2206113, at *1–3. Those "regulations clearly indicate" that when ICE revokes release to effectuate removal, ICE must be able to determine that there is "a significant likelihood that the alien may be removed." *Escalante*, 2025 WL 2206113, at *3.

By requiring that ICE be able to make that showing, the regulations account for the fact that either ICE or a court would have previously found that there was no significant likelihood of the noncitizen's removal. *See* 8 C.F.R. § 241.4(e)(1) (authorizing ICE to release a detainee after the initial entry of a removal order if "[t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest"); *Zadvydas*, 533 U.S. at 701 (authorizing courts to release a detainee who has been ordered removed once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future"). Thus, to change the status quo, ICE must be able to identify a "changed circumstance[.]" 8 C.F.R. § 241.13(i)(2); *cf. Acevedo Duran v. Albarran*, No. 1:26-CV-01108-DC-CKD (HC), 2026 WL 539409, at *5 n.6 (E.D. Cal. Feb. 26, 2026) (explaining that when ICE has previously released a noncitizen after determining that they are not a flight risk or danger, the burden is on the government to show a changed circumstance at any future detention hearing). Therefore, the Court must determine whether respondents have complied with the regulations by showing a "changed circumstance[]" that indicates a

6

"significant likelihood of removal in the reasonably foreseeable future."[6]  8 C.F.R. § 241.13(i)(2).

Respondents argue that DHS submitted a request to Vietnam for a travel document and that this is a sufficient changed circumstance.  Respondents' argument is not persuasive.  When ICE previously released petitioner from detention, ICE necessarily must have determined that "[t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, [was] otherwise not practicable or not in the public interest."  8 C.F.R. § 241.4(e)(1).  Respondents' own records confirm this.  The ICE Form I-213 states that petitioner "has been deemed to be non-removable due to travel documents being unattainable[.]"  Doc. 15, Ex. B at 22.

Given their longstanding previous inability to remove petitioner to Vietnam, respondents provide no reason to believe that they will be able to remove him now.  *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."); *Liu v. Carter*, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely).  Moreover, the government submitted a request to Vietnam on August 22, 2025 for a travel document for petitioner, *see* Doc. 15, Ex. A at 5, over seven months ago, yet they do not state whether Vietnam has provided any response to their request or when it might do so.  Nor do respondents explain whether Vietnam and the United States have a repatriation agreement or whether Vietnam has accepted deportees from the United States, and there is no such evidence in the record.  Respondents have failed to show that there is a significant likelihood of petitioner's removal in

---

[6] Respondents do not appear to dispute that it is their burden to show a changed circumstance.  Their briefing states:  "The Department of Homeland Security may detain an alien who was previously released into the United States on supervision where there are changed circumstances regarding the reasonable foreseeability of his removal."  Doc. 15 at 2 (citing 8 C.F.R. § 241.13(i)(2)).

the reasonably foreseeable future.

Detention is permissible under 8 C.F.R. § 241.13(i)(2) only if ICE can show that there is a significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(2). ICE re-detained petitioner without making that showing and without complying with the regulation. "[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020); *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954). "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). As ICE failed to comply with that regulation, petitioner is likely to succeed on his claim that his detention is unlawful.

### b. Irreparable Harm

Given that petitioner has shown that the revocation of his release was likely unlawful, petitioner faces irreparable harm absent a preliminary injunction. "Obviously, the [unlawful deprivation] of liberty is a . . . severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005). And as the Ninth Circuit has recognized, there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Petitioner is also a father to two children, and the mother of one of his children passed away in 2023. *See* Doc. 19 at 2.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two Winter factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, it "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.NS.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with a choice "between [minimally costly

procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention [and deportation], and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021).

### d. Remedy

The requirements for issuing a preliminary injunction are therefore met. Petitioner's immediate release is required to return him to the status quo ante—"the last uncontested status which preceded the pending controversy." *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025); *see also Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21, 2025) (ordering immediate release of noncitizen detained in violation of regulations).[7]

### V.    Conclusion and Order

Accordingly,

1. Petitioner's motion for a preliminary injunction, Doc. 13, is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See, e.g. Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

4. This matter is referred to the assigned magistrate judge for further proceedings, including

---

[7] In his motion for temporary restraining order, petitioner requested that the Court "order[] his immediate release or the opportunity to receive a bond hearing." Doc. 13 at 2. As the Court finds that petitioner is likely to succeed on his claim that his detention is unjustified under the regulations, the Court finds that immediate release is appropriate and that a bond hearing is unnecessary.

the preparation of findings and recommendations on the petition for writ of habeas corpus or other appropriate action.

5. The Clerk of Court is directed to correct petitioner's name on the docket to "TUAN THANH LE."

IT IS SO ORDERED.

Dated:   March 17, 2026

_____
UNITED STATES DISTRICT JUDGE

10